**NOT PRECEDENTIAL**

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT
_____

No. 24-2373
_____

C. ROBERT H. SHUMAR, JR.; CHERYL A. SHUMAR, husband and wife,
*Appellants*

v.

THE ESTATE OF SONDRA SPAUGY; PENNSYLVANIA STATE POLICE;
WESTMORELAND COUNTY; EXCELA HEALTH WESTMORELAND HOSPITAL;
EXCELA HEALTH FRICK HOSPITAL
_____

On Appeal from the United States District Court
for the Western District of Pennsylvania
(D.C. Civil No. 2:21-cv-01132)
District Judge: Honorable Cathy Bissoon
_____

Submitted Under Third Circuit L.A.R. 34.1(a)
May 2, 2025

Before: KRAUSE, BIBAS, and MONTGOMERY-REEVES, *Circuit Judges*.

(Opinion filed: May 21, 2025)
_____

OPINION*
_____

MONTGOMERY-REEVES, *Circuit Judge*.

In this appeal, Appellant argues that Appellees violated his constitutional rights by

temporarily detaining him for a mental health evaluation without determining whether the

_____

* This disposition is not an opinion of the full Court and pursuant to I.O.P. 5.7 does not
constitute binding precedent.

allegations that lead to the detention were made by a responsible party. Because

Appellees had no independent obligation to investigate the allegations, and because the

allegations, as presented, facially justified the detention, we will affirm.

On August 28, 2019, Sandra Spaugy presented herself to Excela Health Frick

Hospital ("Excela") and requested that a "302 Warrant be issued for" her former landlord,

Robert Shumar. J.A. 17.[1] Spaugy represented to Excela and Westmoreland County

(collectively, "Defendants") that over the preceding six months, Shumar was "acting

really strange." J.A. 33. Spaugy stated that "he ha[d] become really bossy and

controlling," turned off tenants' water after 8:00 PM nightly, was involuntarily "messing"

himself, and "threatened to hide in . . . [a] preschool and . . . hold it hostage until

everyone meets his demands." *Id.* Spaugy also represented that Shumar threatened her

life and was "using narcotics, alcohol, fent[a]n[y]l, [and] mushrooms" within the last

thirty days. J.A. 33–34.

Based on Spaugy's representations, the Westmoreland County Mental Delegate

and a Registered Nurse with Excela authorized a 302 Warrant. The Pennsylvania State

Police promptly executed the Warrant. They placed Shumar in handcuffs and took him

to Westmoreland Hospital. The hospital released Shumar just after midnight the next

day, without performing a medical examination.

---

[1] A warrant issued pursuant to 50 PA. STAT. AND CONS. STAT. ANN. § 7302, colloquially a "302 Warrant," is a creature of the Pennsylvania Human Rights Act. As relevant here, if a 302 Warrant is issued, the State may temporarily detain an allegedly "severely mentally disabled" individual for medical evaluation. *Id.*

One month later, Westmoreland County filed a criminal complaint against Spaugy alleging unsworn falsification to authorities.[2]  Specifically, the County alleged that Spaugy made a "written false statement . . . for a 302 [Warrant]" against Shumar though she knew her allegations not to be true.  J.A. 22.  Spaugy passed away before the charges against her could be fully adjudicated.

Shumar sued Defendants under 42 U.S.C. § 1983[3] alleging that the events that transpired on August 28, 2019, violated his Fourth Amendment rights.  The District Court dismissed the § 1983 claim, and Shumar appealed.[4]

On appeal, Shumar posits that Defendants had an obligation to assess whether Spaugy was a "responsible party" under § 7302[5] such that they could lawfully credit her

---

[2] The 302 Warrant Application that Spaugy signed and submitted conspicuously provided that "any person who purposefully provides any false information when completing this form may be subject to criminal prosecution."  J.A. 39.

[3] Shumar brought six claims against Defendants either individually or collectively; only one claim, Shumar's § 1983 claim, was federal.  After Defendants moved to dismiss, the District Court dismissed Shumar's § 1983 claim and declined to exercise supplemental jurisdiction over Shumar's state-law claims.

[4] We review de novo a district court's decision to grant a motion to dismiss.  *Kalu v. Spaulding*, 113 F.4th 311, 324 (3d Cir. 2024) (citing *Doe v. Univ. of Scis.*, 961 F.3d 203, 208 (3d Cir. 2020)).  "To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'"  *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)).

[5] For a 302 Warrant to issue there must be a "written application by a physician *or other responsible party* setting forth facts constituting reasonable grounds to believe a person is severely mentally disabled and in need of immediate treatment."  50 PA. STAT. AND CONS. STAT. ANN. § 7302.  (emphasis added).  If this threshold requirement is met, "the county administrator may issue a warrant requiring a person authorized by him, or any

3

representations before moving forward with the 302 Warrant process against Shumar. Opening Br. 11. According to Shumar, the District Court committed reversible error by ignoring Defendants' failure to perform their § 7302 "function as gatekeepers." *Id.* But so long as a 302 Warrant applicant "appear[s] responsible," medical officials and county administrators do not have an independent obligation to investigate a 302 Warrant applicant's representations beyond ensuring that those representations facially justify the Warrant's execution. *Doby v. DeCrescenzo*, 171 F.3d 858, 872 (3d Cir. 1999) ("Because the [§] 7302 procedures exist to respond to emergency cases, it is reasonable for the county delegate . . . to issue [302 W]arrants without independent investigation."). This Court has held that this is constitutionally appropriate in the context of a 302 Warrant because "[t]he statutory requirement that the individual appear 'responsible' and the warning on the application form that false statements can subject a petitioner to criminal prosecution are sufficient safeguards . . . to assure the reliability of information communicated to the delegate." *Id.*

Here, Spaugy presented herself to Excela and, under penalty of perjury, represented to Defendants that Shumar was "messing" himself, "threatened to hide in . . . [a] preschool and . . . hold it hostage until everyone meets his demands," and threatened to kill her. J.A. 33. These allegations facially suggest that Shumar both had an inability to care for himself and he posed an imminent threat of violence to others. That Spaugy powered past the threat of criminal prosecution to effectuate her lies—a prosecution

---

peace officer, to take such person to the facility specified in the warrant" without traditional due process. *Id.*

4

which ultimately came to pass—is regrettable.  But, as a legal matter, Defendants do not bear the blame for Spaugy's wrongdoing.  Thus, we will affirm the District Court's judgment.